## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MAINE
## PORTLAND DIVISION

| | |
|---|---|
| **ANDREW MARCH**,  ) | |
| ) | |
| Plaintiff,  ) | |
| v.  ) | COMPLAINT |
| ) | [Civil Rights Action under 42 U.S.C. § 1983] |
| **JANET T. MILLS,** Attorney General for the  ) | |
| State of Maine, **CITY OF PORTLAND,**  ) | |
| **WILLIAM PREIS,** Police Lieutenant of the  ) | |
| City of Portland, **JASON NADEAU,** Police  ) | |
| Officer for the City of Portland, **JOHN DOE,**  ) | |
| Police Officer for the City of Portland,  ) | |
| **GRAHAM HULTS,** Police Officer for the  ) | |
| City of Portland,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

Plaintiff Andrew March, by and through his undersigned counsel, brings this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof alleges the following upon information and belief:

### INTRODUCTION

1.     This case seeks to protect and vindicate fundamental constitutional rights.  This is a civil rights action brought pursuant to the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 challenging the constitutionality of Defendants' enforcement of 5 M.R.S. § 4684-B(2)(D) (hereinafter "Statute"), which suppresses free speech on the public sidewalk due to its content.

2.     The United States Supreme Court has long recognized that public forums have immemorially been held in trust for public use for the purpose of expressing beliefs, communicating thoughts between citizens, and discussing public questions.  The United States Supreme Court has emphasized that public land is the natural and proper place for the

dissemination of information and opinion and that a person cannot have his right to free speech in appropriate places abridged simply because it can be exercised in some other place or because a private entity wants to silence the speech.  The public property in the City of Portland, Maine is no exception.

3.      Defendants place unconstitutional restrictions on Plaintiff's First Amendment freedoms by requiring Plaintiff to stop preaching any Pro-Life message from the public sidewalk if that message allegedly can be heard within the Planned Parenthood Portland Health Center (hereinafter "abortion facility") located at 443 Congress Street, Portland, Maine 04101.

4.      Defendants, through their enforcement of the Statute, ban citizens from engaging in free speech on significant portions of the public sidewalks and streets adjacent to abortion facilities because of the content of the message the speakers convey.  The Statute allows the Defendants arbitrarily to forbid speech with which they or others disagree.

5.      The Statute, thereby, chills and deprives Plaintiff from engaging in expressive activities guaranteed by the First and Fourteenth Amendments to the United States Constitution.

6.      Plaintiff seeks a declaration that Defendants violated his clearly established constitutional rights as set forth in this Complaint; a declaration that the Statute violates the United States Constitution and 42 U.S.C. § 1983; a declaration that, through the enforcement and attempted enforcement of the Statute, Defendants have substantially burdened and unlawfully infringed upon Plaintiff's right to free speech in violation of the United States Constitution and 42 U.S.C. § 1983; a preliminary  injunction and permanent injunction enjoining the enforcement of the Statute; and nominal and compensatory damages for the harm caused by Defendants. Plaintiff also seeks an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.  The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

9.     Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PLAINTIFF

10.     Plaintiff Andrew March is an adult resident of Lewiston, Maine.  Plaintiff is the father of three children and has never been arrested.  Plaintiff Andrew March is a Christian Pastor with deeply held religious convictions.  Plaintiff Andrew March serves as the head pastor at a church, Cell 53, that he helped found in the Lewiston, Maine.  Part of the mission of the church is to plead for the lives of the unborn at the doorsteps of abortion facilities.  Plaintiff Andrew March also holds a special vocation to educate and preach to the public about the harms of abortion.

## DEFENDANTS

11.     Defendant Janet T. Mills is the Attorney General for the State of Maine.  At all relevant times, she was an officer of the State of Maine, acting under color of state law, primarily charged with the enforcement of all the laws of the State of Maine, including the Maine Civil

Rights Act.  Defendant Janet T. Mills has in fact enforced this Act to silence Pro-Life speech in the City of Portland.  Defendant Janet T. Mills is sued individually and in her official capacity as Attorney General for the State of Maine.

12.     Defendant City of Portland is a municipal entity organized under the laws of the State of Maine.  It is a municipal corporation with the right to sue and be sued.

13.     The City of Portland and its officials are responsible for enforcing the laws of the State of Maine, including the Statute set forth in this Complaint.

14.     The Statute and its enforcement are the moving forces behind the actions that deprive Plaintiff of his fundamental constitutional rights as set forth in this Complaint.

15.     The City of Portland and its officials are responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, ordinances, laws, statutes, policies, practices, procedures, and/or customs of the City, including the policies, practices, and procedures of its police department as set forth in this Complaint.

16.     The City and its officials are also responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, ordinances, laws, statutes, policies, practices, procedures, and/or customs that deprived and is depriving Plaintiff Andrew March of his fundamental rights.  These rules, regulations, ordinances, laws, statutes, policies, practices, procedures, and/or customs are the moving force behind actions that deprived and are depriving Plaintiff of his fundamental constitutional rights as set forth in this Complaint.

17.     At all relevant times, the City trained, supervised, and employed its police officers, including Defendant William Preis, Defendant Jason Nadeau, and Defendant John Doe police officer.  The acts, policies, practices, customs, and/or procedures of the City and its police department are the moving force behind the constitutional violations set forth in this Complaint.

4

The deficient training and supervision of these officers, done with deliberate indifference as to its known and obvious consequences, was also a moving force behind the actions that deprived and are depriving Plaintiff of his fundamental constitutional rights as set forth in the Complaint.

18.     The City approved of and ratified the acts, policies, customs, and/or procedures of its police department and its police officers, including Defendant William Preis, Defendant Jason Nadeau, and Defendant John Doe police officer, that deprived and are depriving Plaintiff of his fundamental constitutional rights as set forth in this Complaint.

19.     Defendant William Preis is a Police Lieutenant for the City of Portland.  At all relevant times, he was an agent, servant, and/or employee of the City of Portland, acting under color of state law.  Defendant William Preis is sued individually and in his official capacity as a Police Lieutenant of the City of Portland.

20.     Defendant Jason Nadeau is a Police Officer for the City of Portland.  At all relevant times, he was an agent, servant, and/or employee of the City of Portland, acting under color of state law.  Defendant Jason Nadeau is sued individually and in his official capacity as a Police Officer of the City of Portland.

21.     Defendant John Doe, fictious name of an unknown person, is a Police Officer for the City of Portland.  At all relevant times, he was an agent, servant, and/or employee of the City of Portland, acting under color of state law.  Defendant John Doe is sued individually and in his official capacity as a Police Officer of the City of Portland.

22.     Defendant Graham Hults is a Police Officer for the City of Portland.  At all relevant times, he was an agent, servant, and/or employee of the City of Portland, acting under color of state law.  Defendant Graham Hults is sued individually and in his official capacity as a Police Officer of the City of Portland.

## STATEMENT OF FACTS

**I.      The Statute, 5 M.R.S. § 4684-B(2)(D)**

23.     The Statute was enacted to prohibit and prevent violence at abortion facilities. *See* Christopher Parr, *COMMENT: The Maine Civil Rights Act: History, Enforcement, Application, and Analysis*, 53 Me. L. Rev. 189, 202 (quoting *An Act to Amend the Maine Civil Rights Act to Provide Greater Protections to Reproductive Facilities: Hearing on L.D. 1216 Before the Joint Standing Comm. on Judiciary*, 117th Legis., 1st Reg. Sess. (Me. 1995) (statements of Kathryn Vezina, Gregory C. Luck, M.D., and Stephen L. Wessler).

24.     The stated purpose for the Statute, according to the title of the enacted bill, is to "[p]rovide [g]reater [p]rotections to [r]eproductive [f]acilities." L.D. 1216 (117th Legis. 1995).

25.     The Statute provides in relevant part:

> **2. VIOLATION.** It is a violation of this section for any person, whether or not acting under color of law, to intentionally interfere or attempt to intentionally interfere with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State by any of the following conduct:
>
> > **D.** After having been ordered by a law enforcement officer to cease such noise, intentionally making noise that can be heard within a building and with the further intent either:
> >
> > > **1)** To jeopardize the health of persons receiving health services within the building; or
> > > **2)** To interfere with the safe and effective delivery of those services within the building.

5 M.R.S. § 4684-B(2)(D).

26.     The Statute is enforced well beyond the purported purpose of preventing violence and is used by Defendants as a means of suppressing speech that they or others find undesirable.

27.     The language of the Statute allows Defendants to use it to violate Plaintiff's right to free speech.

28.     Further, the Statute is enforced arbitrarily based on the content of the speech.

29.     Defendants interpret the "intent" requirement to be met merely by speech with a Pro-Life message that can allegedly be heard in the abortion facility.  In effect, making all speech with which Defendants and abortion facility employees disagree a violation of the Statute, regardless of the speaker's actual intent.

30.     The Statute is enforced by all named Defendants.

31.     The Statute imposes the punishment of a fine up to $5,000 for any violation.  5 M.R.S. § 4681(4).

32.     The Statute also allows the Attorney General to bring a civil action for injunctive relief to silence individuals, like Plaintiff, who wish to dissuade peacefully women from having abortions, thereby preventing speech on public sidewalks.

## II.     Defendants Target Plaintiff Andrew March's Peaceful and Religious Free Speech Due to His Pro-Life Message.

33.     Plaintiff peacefully prays, preaches, and counsels outside the abortion facility.

34.     The abortion facility performs abortions and is considered a "building" where "persons receiv[e] health services" under the Statute.

35.     The abortion facility is located on a busy public street, separated from the road only by a small public sidewalk.

36.     The street is loud with honking, sirens, shouting, and various other noises all amplified by and echoing from the walls of buildings surrounding the street.

37.     It is on this loud thoroughfare that Plaintiff uses his voice, completely unamplified by a megaphone or any other device, to preach messages of life, hope, and forgiveness from the Bible.

38.     This thoroughfare also hosts other protests and parades with shouting and various other noises with the approval and assistance of Defendants.

39.    Defendants utilize the Statute to single out the lone, unamplified voice of Defendant, not because of his volume, but because of his religious, Christian, Pro-Life message.

40.    Defendants have enforced and continue to enforce the Statute, requiring Plaintiff to lower his voice to such a degree that his message cannot be heard by those around him above the roar of the street.

41.    Further, Defendants refuse to give Plaintiff an objective noise level to gauge his volume, instead relying solely on reports from abortion facility employees who do not want their clients to hear Plaintiff's Pro-Life message.

42.    Defendants, entirely at the behest of abortion facility employees, prevent Plaintiff from delivering his message on the public sidewalk in front of the abortion facility at a volume that can be heard over the heavy traffic on the road immediately in front of the abortion facility's entrance.

43.    Plaintiff is a Pastor and believes he is called by God to oppose actively the practice of abortion because it is the deliberate destruction of innocent human life.

44.    Plaintiff considers it his vocation to advocate for and protect the lives of the unborn.

45.    Plaintiff considers it his vocation to encourage women to avoid the sin of abortion and to help them repent from their previous sins.

46.    Plaintiff's desire is to speak with women who are particularly vulnerable to the sin of abortion in order to save the lives of innocent children.

47.    Plaintiff's intended audiences for his speech are advocates of abortion and unknowledgeable women who may, when facing a difficult choice, be swayed by pro-abortion advocates.

48.    Plaintiff preaches outside of the abortion facility in order to better reach these women and to give women a last-chance alternative to their life-ending decision.

49.    Plaintiff believes that abortion not only ends the life of a child, but also causes significant emotional and physical harms to women.

50.    Plaintiff wants to reach women before they emotionally and physically harm themselves through abortion.

51.    Plaintiff desires to protect the health of women.

52.    The public sidewalk outside of the abortion facility is a unique avenue for Plaintiff to reach his intended audience as he "can be confident that he is not simply preaching to the choir." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014).

53.    Plaintiff peacefully preaches from the Bible in accordance with his faith to counsel women seeking abortions.

54.    It is imperative to Plaintiff's mission that he speaks at the doors of the abortion facility to ensure that he can give every woman who enters the opportunity to avoid destroying her child and to find solace in Jesus Christ.

55.    On November 6, 2015, Plaintiff was peacefully preaching on the public sidewalk outside of the Planned Parenthood Portland Health Center located at 443 Congress Street, Portland, Maine 04101.

56.    Defendants Jason Nadeau and John Doe told Plaintiff to lower his voice.

57.    Defendant Jason Nadeau told Plaintiff he received an alleged, yet doubtful, complaint that Plaintiff's unamplified voice could somehow be heard above the noises of the busy city street and inside the abortion facility.

58.     Plaintiff asked Defendant Jason Nadeau for an objective volume level at which he could speak.

59.     Defendant Jason Nadeau responded that there was no objective volume level and that the law is based on whether employees in the abortion facility say that they can hear a person.  He then asked Plaintiff to "keep it down."

60.     Plaintiff again attempted to determine how loud he was allowed to speak, imploring Defendant Jason Nadeau, "Can you define to me what keep it down means?  I need an objective standard so that I can honor what you are saying but still speak."

61.     Defendant Jason Nadeau responded: "Keep your voice down so they don't hear it inside."

62.     Again, Plaintiff asked for a way to honor his convictions and exercise his right to speak while honoring the law and the police officer's request.

63.     Plaintiff asked how he was supposed to know if they could hear him or not.  He then asked the Officer what protection his speech had since the abortion facility employees could just call, claiming to hear him, when in fact they could not, in order to silence him.

64.     Defendant Jason Nadeau admitted that the abortion facility employees could lie, claiming to hear Plaintiff, and admitted that the abortion facility employees just wanted to silence Plaintiff.

65.     Defendant John Doe then handed Plaintiff a copy of the Maine Civil Rights Act and told Plaintiff that he was officially being warned under the warning requirement in the Statute.

66.     Plaintiff asked Defendant John Doe to explain the Maine Civil Rights Act to him.

67.    Defendant John Doe refused to do so or to help Plaintiff understand the Maine Civil Rights Act in any way.

68.    Plaintiff did not and still does not know how to comply with the Maine Civil Rights Act.

69.    This warning caused Plaintiff to lower his voice to an inaudible level, losing his right to communicate, for fear of violating the Statute.

70.    Defendants' enforcement of the Statute chilled Plaintiff's speech, as it would a reasonable person of ordinary firmness under the same circumstances.

71.    On December 4, 2015, Plaintiff was peacefully preaching on the public sidewalk outside of the Planned Parenthood Portland Health Center located at 443 Congress Street, Portland, Maine 04101.

72.    Defendant William Preis told Plaintiff to lower his voice.

73.    Plaintiff then asked Defendant William Preis why, earlier in the day on the same street, police officers were helping citizens protest climate change at a much louder volume than Plaintiff was speaking.

74.    Defendant William Preis admitted the climate change protestors were louder than Plaintiff and distinguished Plaintiff's speech because of "specifically the type of speech and what is being said is interfering with a medical procedure."

75.    Defendant William Preis then admitted that the standard is "very grey."

76.    Defendant William Preis explained that "other noise may be louder [than Plaintiff] but [the standard] is not based on a decibel level."

77.    Plaintiff then asked Defendant William Preis, "So then the content of what I am saying is really the problem?"

78.     Defendant William Preis than confirmed that it is a "combination" of the volume and the content.

79.     Plaintiff re-confirmed, "It is not necessarily my volume level because we just conceded that there was a parade out here filled with hundreds of kids which must have outdid me but it is the content of what I am saying."

80.     Defendant William Preis affirmed saying, "There is in the Maine Civil Rights Act language that articulates that if what somebody—the noise that somebody is making—**which could be content**—interferes with the ability of somebody to deliver a medical service that would be a problem."

81.     Plaintiff "begged" and "implored" Defendant William Preis, as he had other Officers for weeks, for an objective standard so he could be sure to comply with the law.

82.     No Defendant has given Plaintiff such a standard.

83.     Defendants silence Plaintiff's speech because he fears legal action as he does not know how to comply with the law.

84.     On December 11, Plaintiff was peacefully preaching on the public sidewalk outside of the Planned Parenthood abortion facility.

85.     Defendant Graham Hults told Plaintiff that "Meredith," a Planned Parenthood employee, claimed she could hear Plaintiff inside the abortion facility and that, based on her allegation, Plaintiff needed to quiet down.

86.     Plaintiff asked for a definitive volume level that he could speak at to avoid false accusations by Planned Parenthood silencing his speech.

87.     Defendant Graham Hults did not give him an answer.

88.     Plaintiff pointed out the irony that the Maine Civil Rights Act was being used to burden his civil right to free speech.

89.     Defendant Graham Hults admitted that police officers do not usually use the Maine Civil Rights Act in this way.

90.     Defendant Graham Hults then threatened Plaintiff with a *criminal* charge for disorderly conduct.

91.     Defendant Graham Hults then admits that he only silences Plaintiff when a Planned Parenthood employee tells him to.

92.     Plaintiff tells Defendant Graham Hults that his voice will always be too loud for Planned Parenthood because he opposes them.

93.     Defendant Graham Hults *agrees* with Plaintiff that, no matter how quiet his voice is, it will be too loud for Planned Parenthood and "they probably just want [Plaintiff] gone."

94.     Defendants' enforcement of the Statute caused Plaintiff to fear that the content of what he was saying and, more specifically, his Pro-Life viewpoint, would subject him to a fine and injunction, prohibiting him from carrying out his mission.

95.     Public sidewalks and streets in Maine are used by citizens for non-abortion related peaceful speech or assembly activities such as labor picketing, anti-war and environmental demonstrations, labor organizing, hawking newspapers or magazines, soliciting charitable contributions, circulating petitions, panhandling, spur-of-the-moment conversations with friends or acquaintances, and parades.  They also are used for such innocent non-speech activities as simple loitering, waiting for public or private transportation, smoking cigarettes, or simply strolling about without an intended destination.

96.     Congress Street, on which the abortion facility is located, is the street where loud, raucous city parades are held.  These parades march right by the abortion facility, in the same location Plaintiff speaks, with amplified noise, megaphones, music, shouting, whistling, live marching bands, and large crowds cheering.  *See, e.g.*, Portland, Maine, *Events Downtown: Veteran's Day Parade*, http://www.portlandmaine.com/events/veterans-day-parade/ (last visited Dec. 11, 2015).

97.     These parades and events are far louder than Plaintiff's unamplified talking, yet Defendants do not enforce the Statute against the participants and spectators.

98.     Notably, the Statute has *only* been used to silence unamplified Pro-Life speech.

99.     Defendants' enforcement of the Statute prevents Plaintiff from speaking and communicating to citizens on the sidewalk because of the content of his speech.

100.     Defendants' enforcement of the Statute severely burdens Plaintiff's ability to win the attention of listeners and, consequently, from reaching the minds of his intended audience— abortion vulnerable women and abortion providers.

101.     Defendants' enforcement of the Statute prevents Plaintiff from engaging in oral communications at a volume that can be heard over traffic.

102.     Without the ability to communicate audibly, Plaintiff's speech and message are effectively suppressed and silenced.

103.     Defendants' enforcement of the Statute does not allow Plaintiff adequate alternative channels of communication.

104.     Defendants' enforcement of the Statute prevents Plaintiff from speaking at an audible volume to persons around the abortion facility for the purpose of offering information with a view to influencing actions that may have imminent and irreversible consequences.

105.    Defendants' enforcement of the Statute prevents Plaintiff from communicating his Pro-Life message to citizens in an audible tone.

106.    Defendants' enforcement of the Statute places a substantial burden on Plaintiff's ability to orally communicate, counsel, and share his peaceful and religious message with citizens contemplating abortion and other life-ending services at the abortion facility.

107.    The Statute's ambiguous requirements and Defendants' selective enforcement render ineffective Plaintiff's attempts to communicate orally because he does not know how to comply with the Statute and, therefore, speaks in inaudible tones to avoid a fine.

108.    Plaintiff has a present and future desire and intention to engage in audible preaching and counseling in front of the abortion facility but refrains from doing so out of fear he will be cited by police and sued by the Attorney General for violating the Statute.

109.    Plaintiff has no plain, adequate, or complete remedy at law to redress the foregoing violations of his constitutional rights and liberty interests, and this suit for injunctive and declaratory judgment is his only means of securing complete and adequate relief.  No other remedies would offer Plaintiff substantial and complete protection from Defendants' unlawful laws, statutes, policies, and practices.

110.    The Statute alleged herein is enforced or enforceable by Defendants under the color and pretense of the laws, statutes, and policies of the State of Maine.

111.    The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

112.    The right to engage in peaceful expressive activity, assembly, and association in quintessential public forums is guaranteed by the Free Speech and Assembly Clauses of the First and Fourteenth Amendments to the United States Constitution.

113.   The right to engage in peaceful prayer, worship, and religious counseling and outreach in quintessential public forums is guaranteed by the Free Speech and Free Exercise Clauses of the First and Fourteenth Amendments to the United States Constitution.

114.   The fact that certain messages may be offensive to some recipients does not deprive these speech activities of constitutional protection.

115.   Defendants' enforcement of the Statute chills and deters fundamental constitutional rights of Plaintiff.

**FIRST CAUSE OF ACTION - 42 U.S.C. § 1983**
**(Free Speech – Viewpoint Discrimination)**

116.   Plaintiff incorporates by reference all stated paragraphs.

117.   The Statute is a content-based restriction on speech.

118.   Defendants admittedly consider the content of the speech when determining a violation of the Statute.

119.   The Statute does not serve a compelling government interest.

120.   The Statute is not the least restrictive means of achieving the State's asserted interest.

121.   The Statute, on its face and as applied, is an unconstitutional abridgement of Plaintiff's affirmative right to free speech secured by the First and Fourteenth Amendments to the United States Constitution.

122.   The Statute allows enforcement based on the intent of the speaker, which is determined by the content and viewpoint of his speech rather than noise.

123.   The Statute treats different noises differently, holding Plaintiff to a higher requirement than car horns, sirens, parades, and other noises because of the content of his speech.

124.    Defendants' enforcement of the Statute chills and deprives Plaintiff of his right to free speech.

125.    As a result, Plaintiff is suffering irreparable harm to his First Amendment rights.

126.    By reason of the Statute, created, adopted, and enforced under color of state law, Defendants have deprived and continue to deprive Plaintiff of his right to engage in speech activities in a traditional public forum in violation of the Free Speech Clause of the First Amendment as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

127.    As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered and will reasonably suffer in the future irreparable harm, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief and damages.

## SECOND CAUSE OF ACTION - 42 U.S.C. § 1983
### (Free Speech – Time, Place, Manner)

128.    Plaintiff hereby incorporates by reference all stated paragraphs.

129.    Public streets and sidewalks are quintessential public forums for speech.

130.    The government's ability to restrict speech in public forums is very limited.

131.    The Statute burdens substantially more speech than necessary to achieve a substantial and legitimate government interest.

132.    The Statute is not a valid time, place, and manner regulation.

133.    The Statute is not narrowly tailored

134.    The Statute does not serve a compelling governmental interest.

135.    The Statute does not leave open ample alternative channels of communication.

136.    Plaintiff cannot reach his intended audience at an audible volume.

137.     The Statute, as enforced by Defendants, has almost completely foreclosed Plaintiff's ability to communicate his message.

138.     The Statute, on its face and as enforced by Defendants, is an unconstitutional abridgement of Plaintiff's affirmative right to free speech secured by the First and Fourteenth Amendments to the United States Constitution.

139.     The existence and enforcement of the Statute chills and deprives Plaintiff of his right to free speech.

140.     As a result, Plaintiff is suffering and has suffered irreparable harm to his First Amendment rights.

### THIRD CAUSE OF ACTION - 42 U.S.C. § 1983
### (Free Speech – Prior Restraint)

141.     Plaintiff hereby incorporates by reference all stated paragraphs.

142.     Public streets and sidewalks are quintessential public forums for speech.

143.     The government's ability to restrict speech in public forums is very limited.

144.     The Statute completely bans Plaintiff from engaging in audible protected speech near the Planned Parenthood Portland Health Center located at 443 Congress Street, Portland, Maine 04101.

145.     The Statute effectively forecloses Plaintiff's ability to communicate orally with his fellow citizens near the Planned Parenthood Portland Health Center.

146.     The Statute does not leave open ample alternative avenues of communication.

147.     The Statute burdens substantially more speech than is necessary to achieve a substantial and legitimate government interest.

18

148.    The Statute, on its face and as enforced by Defendants, is an unconstitutional abridgement of Plaintiff's affirmative right to be free from impermissible prior restraint in violation of the First and Fourteenth Amendments to the United States Constitution.

149.    The existence and enforcement of the Statute chills and deprives Plaintiff of his rights to free speech.

150.    As a result, Plaintiff is suffering and has suffered irreparable harm to his First Amendment rights.

**FOURTH CAUSE OF ACTION - 42 U.S.C. § 1983**
**(Equal Protection – Fourteenth Amendment)**

151.    Plaintiff hereby incorporates by reference all stated paragraphs.

152.    By reason of the aforementioned training, supervision, acts, policies, practices, customs, and/or procedures created, adopted, and enforced under color of state law, Defendants have deprived Plaintiff of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

153.    By disfavoring speech that promotes a Christian, Pro-Life message, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

154.    Defendants' "noise" policy was selectively enforced against Plaintiff because of his religious viewpoint on abortion in violation of the Equal Protection Clause of the Fourteenth Amendment.

155.    By disfavoring speech that promotes a Christian, Pro-Life viewpoint, Defendants deprived Plaintiff of the equal protection guarantee of the Fourteenth Amendment.

156.    The City of Portland's training, supervision, policies, practices, customs, and/or procedures that were the moving force behind the violation of Plaintiff 's fundamental constitutional rights deprived Plaintiff of the equal protection guarantee of the Fourteenth

Amendment.

157.   As a direct and proximate result of Defendants' violation of the Equal Protection Clause, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief.  Additionally, Plaintiff is entitled to nominal damages for the past loss of his constitutional rights.

### FIFTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Due Process - Vagueness)

158.   Plaintiff hereby incorporates by reference all stated paragraphs.

159.   Public streets and sidewalks are quintessential public forums for speech.

160.   Public streets and sidewalks are held in the public trust for use by all law-abiding citizens.

161.   The Statute prohibits "making noise that can be heard within a building."  5 M.R.S. § 4684-B(2)(D).

162.   The Statute further provides that the noise must be made with "intent either: (1) To jeopardize the health of persons receiving health services within the building; or (2) To interfere with the safe and effective delivery of those services within the building."  5 M.R.S. § 4684-B(2)(D)(1)-(2).

163.   The Statute does not give fair notice to citizens.

164.   The Statute does not provide minimal standards to guide law enforcement.

165.   Whether a person is "making noise that can be heard within a building" cannot be known by a law enforcement officer.

166.   "Heard within a building" is not an objective standard with which a person can comply as it varies based on other outside noise, wind and weather conditions, and other variables outside the speaker's control.

20

167.    Because a police officer cannot know with certainty whether a person is making noise that can be heard within a building, he must rely entirely on the reports from people within the building.

168.    Here, Plaintiff is actively opposing the abortion facility and its practices.

169.    Defendant Jason Nadeau admits that the abortion facility wants to suppress Plaintiff's speech and is likely to claim a violation where none exists in order to silence Plaintiff's speech.

170.    Defendant William Preis admits that he cannot determine whether Plaintiff can be heard in the abortion facility and must rely solely on employee reports, even though the abortion facility employees have a motive to lie in order to suppress Plaintiff's speech.

171.    The Statute, therefore, transfers enforcement to the abortion facility employees who Defendants admit want to silence Plaintiff's speech.

172.    The Statute also authorizes and encourages arbitrary and discriminatory enforcement based on content the alleged listener wishes to suppress.

173.    Furthermore, a police officer cannot know whether a person makes a noise with intent either to jeopardize the health of persons receiving health services within the building or to interfere with the safe and effective delivery of those services within the building.

174.    The Statute fails to give law enforcement a standard to determine whether a noise was made with the requisite intent.

175.    As applied against Plaintiff, law enforcement cannot have determined intent to jeopardize or intent to interfere based on Plaintiff reading and explaining the Bible.

176.     The Statute is impermissibly vague because it fails to establish standards for the police that are sufficient to guard against the arbitrary and discriminatory suppression of First Amendment rights.

177.     The Statute is impermissibly vague because it fails to establish standards for the police that are sufficient to guard against arbitrary deprivation of liberty interests.

178.     The Statute, on its face and as enforced by Defendants, is an unconstitutional abridgement of Plaintiff's affirmative rights in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks that the Court:

a.       Assume jurisdiction over this action;

b.       Declare that the Defendants violated Plaintiff's fundamental constitutional rights as set forth in this Complaint;

c.       Declare that 5 M.R.S. § 4684-B(2)(D) is unconstitutional on its face;

d.       Declare that 5 M.R.S. § 4684-B(2)(D) is unconstitutional as applied to Plaintiff's expressive activities;

e.       Enter preliminary and permanent injunctions enjoining Defendants from enforcing 5 M.R.S. § 4684-B(2)(D);

f.       Award Plaintiff compensatory and nominal damages against Defendants for all 42 U.S.C. § 1983 claims as set forth in this Complaint;

g.       Award Plaintiff his reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

h.       Grant such other and further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.


Date: December XX, 2015                    Respectfully submitted,

                                           /s/ Stephen Whiting
                                           Stephen Whiting
                                           The Whiting Law Firm, P.A.
                                           75 Pearl Street, Suite 207
                                           Portland, Maine 04101
                                           (207) 780-0681
                                           info@whitinglawfirm.com

                                           THOMAS MORE LAW CENTER
                                           Erin Elizabeth Mersino, MI Bar #P70886*
                                           Kate Oliveri, MI Bar #P79932*
                                           24 Frank Lloyd Wright Drive
                                           Ann Arbor, Michigan 48106
                                           (734) 827-2001
                                           emersino@thomasmore.org
                                           koliveri@thomasmore.org
                                           *Pro hac vice pending

                                           *Counsel for Plaintiff*