UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ANDREW MARCH )<br>)<br>)<br>      Plaintiff )<br>)<br>v. )<br>)<br>JANET T. MILLS, et al. )<br>)<br>)<br>      Defendants ) | Civil Action Docket No. 15-515-NT |

**SUPPLEMENTAL BRIEF OF DEFENDANTS DONALD KRIER AND WILLIAM PREIS IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to the Court's request during oral argument on April 4, 2016, and the Court's minute entry dated April 4, 2016, Defendants Donald Krier and William Preis submit the following supplemental brief to address certain issues that arose during oral argument. As discussed in more detail below, Section 4684-B is content neutral, even when considering the Supreme Court's decision in *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). Nevertheless, if this Court concludes that the statute is content based, it will withstand strict scrutiny. The State has a compelling interest in protecting the health and safety of its citizens and Section 4684-B is narrowly tailored to be the least restrictive means of achieving that interest. Finally, the Court has an obligation to construe Section 4684-B to avoid any constitutional conflicts. For these reasons, as well as the reasons set forth in Defendant Attorney General's Opposition to Plaintiff's Motion for a Preliminary Injunction, Plaintiff's request for a preliminary injunction should be denied.

*Section 4684-B is Content Neutral*

Section 4684-B of the Maine Civil Rights Act does not regulate speech on the basis of its content. In fact, this statute does not specifically regulate speech at all. By contrast, this statute regulates noise when it is loud enough to be heard within a medical building and when such noise is made with the intent to interfere with the safe and effective delivery of health services or to jeopardize a patient's health. 5 M.R.S. § 4684-B(2)(D).

At oral argument, the Court discussed the case of *Reed v. Town of Gilbert* and suggested that this case might impact the Court's analysis of whether Section 4684-B is content neutral. However, for the following reasons, *Reed* has limited applicability to the instant case. The plaintiff in *Reed* brought a First Amendment challenge to the town's sign code, which imposed different regulations on signs depending on the type of information that the signs conveyed. *Reed*, 135 S. Ct. at 2224. The Court began its analysis by explaining that the "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. The Court further explained that "[s]ome facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Id.* For example, the Court noted that under the sign code, "[i]f a sign informs a reader of the time and place a book club will discuss John Locke's Two Treatises of Government, that sign will be treated differently from a sign expressing the view that one should vote for one of Locke's followers in a upcoming election . . . ." *Id.*

The Court's reference to the "function or purpose" of speech, and its ensuing example, do not mean that the possible consideration of content under Section 4684-B makes the statute content based. The Court's reference and example make the point that it is impermissible to treat

2

two signs about John Locke differently just because one is conveying information about a book club and the other is conveying information about an election. *Id.* Section 4684-B does not make such impermissible distinctions. Section 4684-B only restricts noise that is made with the intent to interfere with the safe and effective delivery of health services or to jeopardize a patient's health. Accordingly, the statute regulates noise if it is made with the intent of interfering with the health services, regardless of the type of noise or the subject matter. Thus, unlike the law in *Reed* that regulated signs entirely based on their communicative content, Section 4684-B does not regulate communicative content at all.

In addition, the Supreme Court has long held that "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489, (1993). In *McCullen v. Coakley*, 134 S. Ct. 2518, 2524 (2014), the State argued that the buffer zone was narrowly tailored, in part because it would be difficult to prove intentional or deliberate obstruction or intimidation of persons seeking health care services from the clinic. In response, the Court stated that "to determine whether someone intends to block access to a clinic, a police officer need only order him to move; if he refuses, then there is no question that his continued conduct is knowing or intentional." *Id.*

Section 4684-B only applies to noise that is made with the intent to interfere with health services. As the Court explained in *McCullen*, requiring intentional interference with access to health services makes the law narrowly tailored. Thus, under *McCullen*, regardless of what type or content of noise an individual is making, intent can be inferred if the individual refuses to stop making the same level of noise after he or she is told by a police officer to make less noise.

### *Even if Section 4684-B is Content Based, it Withstands Strict Scrutiny*

As discussed above, Section 4684-B is content neutral. Therefore, the statute will withstand plaintiff's First Amendment challenge so long as it is narrowly tailored to serve a significant governmental interest and it leaves open ample alternative channels for communication. *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Assuming, however, for the purposes of this brief that Section 4684-B is content based, the statute will withstand plaintiff's First Amendment challenge so long as it is "the least restrictive means of achieving a compelling state interest." *McCullen*, 134 S. Ct. at 2530 (citing *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).

During oral argument, this Court questioned whether the "narrowly tailored" and "least restrictive means" are different formulations of the strict scrutiny standard. Indeed, "narrowly tailored" and "least restrictive means" are sometimes used in conjunction when determining whether a content based law withstands strict scrutiny. For example, in *Playboy Entm't Grp.* the Court explained that "[i]f a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest. If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy Entm't Grp., Inc.*, 529 U.S. at 813 (internal citation omitted). Similarly, in *Auburn Police Union v. Tierney*, 756 F. Supp. 610, 617 (D. Me. 1991), this Court stated that the strict scrutiny standard requires that "the state must demonstrate that the challenged law serves a compelling governmental interest and is narrowly tailored to be the 'least restrictive means' of furthering that interest."[1]

---

[1] Courts sometimes use "narrowly tailored" without reference to the "least restrictive means." *See, e.g.*, *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1671 (2015) (holding that the First Amendment requires that restrictions on speech "be narrowly tailored" and not "perfectly tailored" and that "[t]he First Amendment does not confine a State to addressing evils in their most acute form."); *Sullivan v. City of Augusta*, 310 F. Supp. 2d 348, 355 (D. Me. 2004)

In reference to courts' use of both "narrowly tailored" and "least restrictive means," the United States District Court for the District of Massachusetts noted that "[a]s a consequence, it is not only somewhat unclear which standard governs, but precisely what those standards mean relative to each other." *McLaughlin v. City of Lowell*, No. 14-10270-DPW, 2015 WL 6453144, at *5 (D. Mass. Oct. 23, 2015). Nevertheless, in a case decided after *Reed* and *McCullen*, the First Circuit concluded that a content based law "may be upheld only if that law uses the least speech restrictive means to serve what must be a compelling governmental interest." *Cutting v. City of Portland, Maine*, 802 F.3d 79, 84 (1st Cir. 2015). Therefore, it does not appear that *Reed* changed the strict scrutiny standard for content based laws and, thus, if a statute is content based, it must be the least restrictive means of achieving the government's interests.

The Supreme Court and the First Circuit have upheld content based statutes under the First Amendment strict scrutiny standard. In *Burson v. Freeman*, 504 U.S. 191 (1992), the Court concluded that the state statute was content based because it only restricted political speech and, therefore, was subject to strict scrutiny. *Id.* at 198. Applying the strict scrutiny standard, the Court held that the statute prohibiting solicitation of votes and display or distribution of campaign materials within 100 feet of an entrance to polling places was narrowly drawn to serve the state's compelling interest in preventing voter intimidate and election fraud. *Id.* 198-200. The Court further noted that there were two rights at stake, namely the right to free speech and the right to vote absent intimidation or fraud. *Id.* at 210. In light of these competing rights, the Court held that requiring solicitors to stand 100 feet from polling entrances was not an unconstitutional compromise. *Id.*

---

(explaining that "content-based regulations are subject to strict scrutiny and require the government to show that the challenged regulations are necessary to serve a compelling state interest and are narrowly drawn to achieve this end.").

Similarly, in *Auburn Police Union v. Carpenter*, 8 F.3d 886, 893 (1st Cir. 1993), the court concluded that the Maine statute prohibiting solicitation of the general public for something that tangibly benefits a law enforcement officer, agency, or association was content based because it only prohibited certain types of solicitation, which required an examination of the content of each solicitation to determine whether it was prohibited. The court applied strict scrutiny and held that the state had a compelling interest in preventing perceived or actual coercion by police officers and that the statute was not under-inclusive or over-inclusive in furthering the state's interest. *Id.* at 897-901.

Like these statutes, Section 4684-B withstands strict scrutiny as it furthers a compelling interest and is narrowly tailored to be the least restrictive means of achieving that interest. First, with respect to the State's compelling interest, "[i]t is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'" *Hill v. Colorado*, 530 U.S. 703, 715, 120 S. Ct. 2480, 2489, 147 L. Ed. 2d 597 (2000) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 475 (1996)). In accordance with *Hill*, Maine has a compelling interest to protect the health and safety of its citizens. Moreover, Maine has a compelling interest to ensure that patients are not prevented from receiving safe and effective delivery of health services and that the health of patients receiving health services is not jeopardized. *See* 5 M.R.S. § 4684-B. Section 4684-B furthers this compelling interest by prohibiting "persons from intentionally interfering with another person's exercise of a constitutionally or statutorily secured right, including the right to obtain reproductive health services, through . . . making noise, after having been warned by a police officer to cease, that endangers persons receiving health services." Exhibit A to Sproul Aff. at 074, attached to Defendant's Opposition.

Second, Section 4684-B is narrowly tailored to be the least restrictive means to achieve Maine's compelling interest in ensuring that patients are not prevented from receiving safe and effective delivery of health services and that the health of patients receiving health services is not jeopardized. Section 4684-B only restricts *noise* that is *intended* to interfere with the delivery of safe and effective health services or to jeopardize the health of patients receiving such services. The statute's requirement that the noise be *intended* to interfere with the State's interests, makes this statute the least restrictive means of achieving the State's interests. Plaintiff is correct that there are a number of noises outside of the Planned Parenthood building, including parades from time to time. However, such noise would not be subject to Section 4684-B unless it was made with the intent to interfere with the delivery of health services or to jeopardize the health of patients. In fact, the Statement of Fact included in the final bill, states that "[t]his violation provision is narrowly drawn and includes specified intent requirements to avoid conflict with the First Amendment right to free speech." Exhibit A to Sproul Aff. at 074, attached to Defendant's Opposition.

Finally, as in *Burson*, there are two rights at stake in this case—the right to health services, including reproductive health services, and the right to free speech. Section 4684-B does not prevent any category of noise or speech. When a police officer receives a complaint that noise is interfering with the provision of safe and effective health services or jeopardizing the health of a patient, the law enforcement officer informs the person making the noise that he or she needs to reduce the noise level. At no point does the police officer tell the person that he or she must cease the noise altogether. For these reasons, Section 4684-B does not constitute an unconstitutional compromise and should be upheld.

### *The Court Must Interpret the Statute to Avoid Constitutional Issues*

The Court has an obligation to construe Section 4684-B to avoid any constitutional issues. This rule of statutory constructions provides that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). *See also United States v. Brown*, 74 F. Supp. 2d 44, 50 (D. Me. 1999), *aff'd*, 295 F.3d 152 (1st Cir. 2002) (citing *New York v. United States,* 505 U.S. 144, 170 (1992) ("The doctrine of constitutional doubt provides that where an otherwise acceptable construction of a statute would raise serious constitutional problems, the court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). Furthermore, this Court has stated that it "is obligated to apply 'the elementary rule' that 'every reasonable construction must be resorted to in order to save a statute from unconstitutionality.'" *All. of Auto. Mfrs. v. Gwadosky*, 353 F. Supp. 2d 97, 102 (D. Me.), *aff'd sub nom. All. of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30 (1st Cir. 2005) (citing *Hooper v. California,* 155 U.S. 648, 657 (1895)). In other words, "[w]hen faced with two possible constructions of a statute, one of which would raise 'serious constitutional problems' while the other would not, courts are required to construe the statute to avoid such problems." *Gwadosky*, 353 F. Supp. 2d at 102 (citing *INS v. St. Cyr,* 533 U.S. 289, 299-300 (2001)).

Section 4684-B makes it a violation of the MCRA to "intentionally interfere or attempt to intentionally interfere with the exercise or enjoyment by any other person of rights" secured by state or federal law, if after having been warned by a law enforcement officer, a person is "intentionally making noise that can be heard within a building and with the further intent . . .

[t]o interfere with the safe and effective delivery of [health] services within the building." Thus, this statute does not regulate speech at all. Instead, this statute regulates noise when it is loud enough to be heard within a medical building and when such noise is made with the intent to interfere with the safe and effective delivery of health services or to jeopardize a patient's health. 5 M.R.S. § 4684-B(2)(D). The Court should thus construe the statute as applying to all noise regardless of the type of noise or content of the noise.

Finally, as Officer Preis explained to plaintiff, when the police department receives a complaint that someone is making noise that is interfering with the provision of health services, the police officers have an obligation to respond to the complaint. To date, the police officers have simply informed plaintiff that they received complaints that he was interfering with the provision of health services. The police officers do not inquire about the type of noise or the content of noise. Moreover, plaintiff has simply been warned under Section 4684-B and no action been brought against plaintiff under this statute. To the contrary, plaintiff has continued to protest and, thus, is capable of doing so in a manner that does not intentionally interfere with the provision of health services. Because plaintiff has simply been warned to reduce the noise level, and no action has been brought against him, the Court should not interpret the statute as having been applied against him unconstitutionally.

*Conclusion*

For these reasons, as well as the reasons set forth in Defendant Attorney General Janet T. Mills's Opposition to Plaintiff's Motion for a Preliminary Injunction, the plaintiff's request for a preliminary injunction should be denied.

Dated: April 18, 2016

*/s/ Edward R. Benjamin, Jr.*
Edward R. Benjamin, Jr., Esq.
Jeana M. McCormick, Esq.
Drummond Woodsum & MacMahon
84 Marginal Way, Suite 600
Portland, ME
(207) 772-1941
ebenjamin@dwmlaw.com
jmccormic@dwmlaw.com
Attorneys for Defendants Kreir and Preis

## CERTIFICATE OF SERVICE

      I hereby certify that on April 18, 2016, I electronically filed the Supplemental Brief of Defendants Donald Krier and William Preis in Opposition to Plaintiff's Motion for a Preliminary Injunction with the Clerk of CM/ECF system, which will send notification of such filings to all counsel of record.

                                          */s/Edward R. Benjamin, Jr.*  _____
                                          Attorney for Defendants Kreir and Preis