UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANDREW MARCH,<br><br>    Plaintiff,<br><br>v.<br><br>AARON M. FREY, et al.,<br><br>    Defendants. | Case No.: 2:15-cv-00515-NT |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT
<u>WITH INCORPORATED MEMORANDUM OF LAW</u>**

*The City of Portland's policies, which mis-applied the Maine Civil Rights Act, were used to threaten Plaintiff with violations of it and chilled his right to free speech.*

## <u>INTRODUCTION</u>

  Defendant City of Portland ("Portland") correctly asserts in its Motion For Summary Judgment With Incorporated Memorandum Of Law ("Summary Judgment Motion") that Plaintiff challenges the validity of the Maine Civil Rights Act ("MCRA") and its application to him. The contested provision of the MCRA makes it a violation to, inter alia, intentionally make noises loud enough to be heard inside of a building with the intent to jeopardize the health of persons receiving health care services or to interfere with the safe and effective delivery of those services within the building. 5 M.R.S. § 4684-B(2)(D) ("Noise Provision").

  Portland argues that it is entitled to summary judgment because there is no evidence of a city custom or policy that was the moving force behind any constitutional violation. However, Plaintiff opposes Portland's Summary Judgment Motion and asserts that, as applied to him

1

through Portland's policies, the Noise Provision: violates the First Amendment because it restricts Plaintiff's ability to express his opposition to abortion outside of the Planned Parenthood-Portland Health Center, located at 443 Congress Street, Portland Maine ("Planned Parenthood"); is being selectively enforced against Plaintiff in violation of the Equal Protection Clause; and is unconstitutionally vague.

## LAW AND ARGUMENT

Summary judgment is appropriate "where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The First Circuit has articulated the legal standard for deciding motions for summary judgment as follows:

> [T]he movant must adumbrate "an absence of evidence to support the nonmoving party's case." When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both "material," in that it might affect the outcome of the litigation, and "genuine," in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent.

*Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989) (citations omitted).

Portland's arguments—which present questions of fact that should be determined by trial on the merits as opposed to summary judgment per Fed. R. Civ. P. 56—boil down to: 1) Portland's enforcement of the noise provision, because it is a state law, does not implicate a custom or policy of Portland; 2) Portland's responses to complaints made under the Noise Provision were not deliberately indifferent to Plaintiff's constitutional rights; and 3) that Portland's responses to complaints made under the Noise Provision did not result in any violation of Plaintiff's constitutional rights. However, Portland's arguments fail and granting summary judgment is not appropriate. First, Plaintiff has established the existence of numerous

2

material and genuine facts upon which a reasonable jury could return a verdict in his favor.[1][2] Second, Portland has not established an absence of evidence to support Plaintiff's case.

Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and federal laws." 42 U.S.C. § 1983. Municipalities are persons subject to Section 1983. *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978). There are two elements of a Section 1983 claim. Plaintiff must allege both: (1) a deprivation of a federal right, and (2) that the person who deprived him of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Since Plaintiff is seeking to establish municipal liability, he must also show that the deprivation of his federal right was attributable to the enforcement of a municipal custom or policy. See *Monell*, supra. Additionally, a Section 1983 defendant "may be held liable for those consequences attributable to reasonably foreseeable intervening forces, including acts of third parties." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989). The requisite causal connection is satisfied if the defendant sets in motion a series of events he knew or reasonably should have known would cause third parties to violate the plaintiff's constitutional rights. *Id*. at 561; see also *Young v. City of Providence*, 404 F.3d 4, 23 (1st Cir. 2005); and *Los Angeles County v. Humphries*, 562 U.S. 29 (2010).

The MCRA creates a cause of action against any person who, "whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere" with another person's rights secured by the United States or Maine Constitutions or state or federal law. 5

---

[1] Plaintiff fully incorporates herein and relies upon Plaintiff's Motion for Summary Judgment With Incorporated Memorandum of Law and Statement of Material Facts in support of his arguments in opposition to Defendant Portland's Summary Judgment Motion.

[2] Plaintiff fully incorporates herein and relies upon Plaintiff's Response in Opposition to Defendant Attorney General Aaron M. Frey's Motion for Summary Judgment With Incorporated Memorandum of Law and Statement of Material Facts in support of his arguments in opposition to Defendant Portland's Summary Judgment Motion.

M.R.S. §§ 4681, 4682. The MCRA authorizes the Attorney General to bring civil actions against violators for injunctive or other appropriate equitable relief. 5 M.R.S. § 4681(1). In an action brought by the Attorney General, a violation of the MCRA is a civil violation for which a civil penalty of not more than $5,000 for each defendant may be adjudged. 5 M.R.S. § 4681(4). A violation of the MCRA can also result in injunctive relief, seriously curtailing a Defendant's Free Speech rights.  See: *State of Maine  v.  Brian Ingalls*, Cumberland Co. Sup. Ct., CV-15-497, Order on Motion for Preliminary Injunction (Justice Walker, 10/9/17). At issue in this matter is the MCRA's Noise Provision which forbids:

> any person, whether or not acting under color of law, to intentionally interfere or attempt to intentionally interfere with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State by . . . After having been ordered by a law enforcement officer to cease such noise, intentionally making noise that can be heard within a building and with the further intent either: (1) To jeopardize the health of persons receiving health services within the building; or 2) To interfere with the safe and effective delivery of those services within the building.

5 M.R.S. § 4684-B(2).

Co-defendant Office of the Attorney General ("OAG") exercises prosecutorial discretion over whether to bring charges for alleged violations of the MCRA and possesses the authority to prosecute such alleged violations. 5 M.R.S. §§ 4681, 4682. However, "…[t]he Attorney General acts on referrals… [c]omplaints about potential civil rights violations, including violations of the Noise Provision, are initially investigated by the local law enforcement agency. … [i]f that agency identifies a possible violation of the MCRA, the agency then refers the matter to the Attorney General for prosecutorial review under the MCRA." OAG Summary Judgment Motion, p. 4. Furthermore, "every law enforcement agency in Maine is required by the Maine Criminal Justice Academy to have a trained civil rights officer." Robbin Affidavit, ¶

4 (Docket Item 160-1, Page ID 1602). Accordingly, if Portland "identifies a possible violation of the Maine Civil Rights Act ("MCRA"), [Portland] then refers the matter to the Attorney General for prosecutorial review under the MCRA." Robbin Affidavit, ¶ 4 (Docket Item 160-1, Page ID 1602).

To fulfill its law enforcement role, Portland established policies designed to investigate and enforce potential violations of the Noise Provision. Laughably—despite the language of the MCRA, the assertions of the OAG, and Portland's own policies related to their law enforcement responsibilities—Portland tries to argue that "[w]hen City officers issue warnings expressly contemplated by that state statute, they are not carrying out a City custom or policy. Therefore, the City cannot be held liable under Section 1983."[3][4] Portland's Summary Judgment Motion, p. 5. However, Portland's assertions are belied by their own policies specifically promulgated to investigate and enforce the Noise Provision upon receiving complaints against protestors made by Planned Parenthood.

On February 18, 2013, Michael Sauschuck, Chief of Police, Portland Police Department, promulgated a policy for officers regarding ongoing sidewalk protests at Planned Parenthood. This policy: draws officers' attention to "the MCRA prohibition against creating noise that can be heard within the building where health services are being provided;" states that any future violations of the MCRA "will be referred to the Attorney General's office for prosecution;" and instructs any officer who has questions to contact the Police Department Neighborhood Prosecutor. Furthermore, this policy included as attachments possible criminal offenses,

---

[3] Interestingly, after making this "point," Portland then concedes "t]he First Circuit has not yet decided whether enforcement of state law by municipalities can give rise to municipal liability under Section 1983." Portland's Summary Judgment Motion, p. 5.

[4] Also contradicting this argument, later in their Motion for Summary Judgment, Portland argues "[t]he City's officers also encouraged Mr. March to consult with … the Attorney General's office if he had further questions concerning Portland's policies related to enforcement of the Noise Provision." Portland's Summary Judgment Motion, p. 14.

possible civil offenses, and MCRA, Me. Rev. Stat. Ann. Title 5 § 4684-B(2). [JSR No. 19, page 4 - 6].

Subsequently, on July 9, 2014, Portland Police Department Lieutenant Glen McGary promulgated a policy for officers related to an overtime paid detail at Planned Parenthood ("Planned Parenthood Detail"). It required the Planned Parenthood Detail officer: to take hourly counts of the number of protestors present at Planned Parenthood from 0800 – 1200; to email the counts to a police supervisor; and to contact the Neighborhood Prosecutor with legal questions. Furthermore, the Planned Parenthood Detail provided officers with an onsite Planned Parenthood employee as a contact and provided a direct telephone number to that person. Importantly, Planned Parenthood itself *paid* the City of Portland to conduct the Planned Parenthood Detail and the overtime wages of the assigned Planned Parenthood Detail officer. [JSR No. 19, pages 7, 15-18; JSR No. 27R, page 26; and JSR No. 29R, pages 15 – 18].

Thereafter, on July 28, 2015, Richard M. Bianculli, Neighborhood Prosecutor for the Portland Police Department, promulgated a policy and statute summary written in conjunction with Chief Sauschuck for officers regarding protests at Planned Parenthood. It informs officers—incorrectly under the MCRA—that "it is a violation of the MCRA for protestors to protest loudly to the point where their voices can be heard within the counseling rooms for Planned Parenthood." It provided officers with a hyperlink to the MCRA and informed them—incorrectly under the MCRA—that "if you are responding to this type of situation, a citation can be issued if the individual refuses to follow your directive after a verbal warning." Mr. Bianculli told the officers that they could contact him directly with questions. Additionally, this policy draws officers' attention—incorrectly under the MCRA—to a purported MCRA "prohibition against

creating noise that can be heard within the building where health services are being provided" and stated that any future violations of the MCRA "will be referred to the Attorney General's office for prosecution." Similar to Portland's other policies for enforcing the MCRA against protestors at Planned Parenthood, this policy instructs any officer to contact the Neighborhood Prosecutor with questions and includes, as attachments, possible criminal offenses, possible civil offenses, and MCRA, Me. Rev. Stat. Ann. Title 5 § 4684-B(2). [JSR No. 19, pages 8 - 11]

Finally, on January 6, 2016, Portland Police Department Commander Gary Rogers promulgated another policy for officers working as the "Planned Parenthood Overtime Detail Officer as part of the Planned Parenthood Detail." This policy contains a list of expectations and duties for the Planned Parenthood Detail and instructs officers that if notified "by Planned Parenthood staff that someone is so loud they are interfering with the safe and effective delivery of health services you will need to warn the person who is too loud and explain to them what they are being warned for as well as the consequences for continuing (you do not need to be the one to hear if it is too loud inside, if they say it is too loud that is *good enough*.)" Also, the policy states that upon receiving a complaint from Planned Parenthood, the officer must notify a supervisor, write a report, and forward it to the Attorney General's office. Finally, the policy states that "at a minimum, we should obtain a detailed statement from the clinic staff person which indicates the series of events and the *notion* that the protestor has interfered with the safe and effective delivery of health services within the building and provides a point of contact for a Planned Parenthood staff member and her telephone number." [JSR No. 22, page 7 - 8]

Clearly, Portland's policies regarding enforcement of the Noise Provision, established exclusively to address "complaints" from Planned Parenthood—the opponent of Plaintiff's speech and the entity paying Portland for a special overtime police detail—are constitutionally

suspect and likely to stifle Plaintiff's speech. Certainly, violations of Plaintiff's rights are foreseeable because Portland's policies have permitted Planned Parenthood to purchase a "heckler's veto" enforced by police power which operates to prevent and chill Plaintiff's speech due to its content. A heckler's veto occurs when the government accepts restrictions on speech because of the anticipated or actual reactions of opponents of the speech (see generally *Terminiello v. Chicago*, 337 U.S. 1 (1949) and its progeny).

Portland undermines its position when attempting to distinguish its enforcement of the Noise Provision against Plaintiff and other anti-abortion protestors from its absolute failure to enforce it against anyone else: "… the officers did not issue warnings to other people on the sidewalk or to persons parading down Congress Street (protesting climate change, for example) for the simple reason that they did not receive any complaints [about] the noise those people [generated]… . It may be true that the City's police officers did not issue any warnings to those involved in the climate change protest or in any parade down Congress Street to reduce their noise levels; however, it is also true that there is no evidence that the City received complaints that noise generated by those gatherings was interfering with the provision of health care services in any building." Portland's Summary Judgment Motion, pgs. 5, 6, 8, 12 and 14. Obviously, Planned Parenthood did not make any complaints against any of these other entities because Planned Parenthood is not opposed to the messages being expressed. Instead, Planned Parenthood surgically wields the heckler's veto it bought from Portland against Plaintiff to silence him because they oppose the content of his pro-life message.

The Planned Parenthood facility is located on a busy street with lots of traffic and noise—where parades are hosted and where various protests occur. The Planned Parenthood facility is located on a street where people yell, sing and play the guitar. It is located near a park

called Monument Square that hosts events with amplified noise. Yet Planned Parenthood has only made complaints under the Noise Provision against Plaintiff and other pro-life protestors. Furthermore, since its inception, the MCRA and its Noise Provision have only been enforced by Portland against pro-life protestors and only upon complaints from Planned Parenthood.

Per the written polices of Portland, the mis-applied standard for enforcing the Noise Provision against Plaintiff is that it is "*good enough*" for Planned Parenthood to merely allege that they heard noise within the Planned Parenthood facility under the guise of a "*notion*" that such noise is somehow affecting undisclosed medical procedures being administered to unnamed patients within an unidentified section of the Planned Parenthood facility. As such, violations of Plaintiff's constitutional right were not only foreseeable, they were inevitable. In fact, Planned Parenthood staff have admitted to making complaints to Portland based upon the content of Plaintiff's speech.

Pursuant to Portland's policies, to silence Plaintiff, Planned Parenthood need merely summon an officer—who is being paid by Planned Parenthood—and subjectively complain that Plaintiff is being too loud. The result is an unconstitutional and impermissible ad hoc free speech buffer zone emplaced at the whim of Planned Parenthood insulating them—under penalty of civil and criminal enforcement by Portland—from speech they disagree with. (See generally *McCullen v. Coakley*, 573 U.S. 464 (2014)).  Portland's policies for enforcing the Noise Provision have established a causal connection between itself, Planned Parenthood, and the OAG which have set in motion a series of events they knew—or reasonably should have known—would violate Plaintiff's rights.

## **CONCLUSION**

Plaintiff has established the existence of numerous material and genuine facts upon which a reasonable jury could return a verdict in his favor. Conversely, Portland has not established an absence of evidence to support Plaintiff's case. Therefore, granting summary judgment on behalf of Portland is not appropriate. Plaintiff's speech has been chilled, and he has ceased preaching and counseling on the sidewalk outside of Planned Parenthood. Accordingly, the Noise Provision, *as applied* to Plaintiff through Portland's policies, violates the First Amendment because: it restricts Plaintiff's ability to express his opposition to abortion outside of Planned Parenthood; it is being selectively enforced against him in violation of the Equal Protection Clause; and it is unconstitutionally vague. For the reasons set forth above, Plaintiff respectfully requests that summary judgment not be entered in Portland's favor on any claims.

Respectfully submitted,

/s/ Brandon Bolling
Brandon Bolling MI Bar #P60195*
Thomas More Law Center
24 Frank Lloyd Wright Drive
Ann Arbor, Michigan 48106
(734) 827-2001
bbolling@thomasmore.org
*Pro hac vice

/s/ Stephen C. Whiting
Stephen C. Whiting, Bar #559
The Whiting Law Firm, P.A.
75 Pearl Street, Suite 207
Portland, Maine 04101
(207) 780-0681
info@whitinglawfirm.com

Attorneys for Plaintiff

Dated:  July 22, 2019

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 22, 2019, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all parties of record.

      /s/ Brandon M. Bolling